IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **PRIMORIS T&D SERVICES, LLC,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | CIVIL ACTION NO. 4:23-CV-00416-P |
| **AUSTIN "RICK" WESTBROOK AND MASTEC UTILITY SERVICES, LLC,** | § § § § | |
| **Defendants.** | § | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

Primoris T&D Services, LLC ("Primoris" or "Plaintiff") files this First Amended Complaint, Application for Temporary Restraining Order and Temporary Injunction, against Defendants Austin "Rick" Westbrook ("Westbrook") and MasTec Utility Services, LLC ("MasTec"), and respectfully shows the Court as follows:

### I.
### PARTIES

1. Plaintiff Primoris is a Delaware limited liability company with offices in Tarrant County, TX. Primoris is a subsidiary of Primoris Services Corporation, which is incorporated in Delaware and has a principal place of business in Dallas, Texas.

2. Defendant Westbrook resides at 430 Dummyline Rd., Madisonville, Louisiana 70447. Westbrook has been served with process and has appeared in this action.

3. MasTec Utility Services, LLC is a Florida limited liability company with its principle place of business in Coral Gables, Florida, and is registered to do business in Texas and has operations in Texas. Its registered agent is Corporation Service Company dba CSC-Lawyers

Incorporating Service Company, 311 E. 7th Street, Suite 620, Austin, Texas 787101-3218. The residence of MasTec's members is presently unknown.

## II.
## JURISDICTION AND VENUE

4. This Court has federal jurisdiction over this suit because it is a suit between citizens of different states in which the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5. The Court has personal jurisdiction over Westbrook because he does business in Texas, and this lawsuit arises from Westbrook's conduct in Texas. Westbrook also signed a contractual waiver of jurisdiction for Texas courts.

6. This Court has personal jurisdiction over MasTec because it is registered to do business in Texas, operates in Texas, employs Westbrook for projects in Texas (including Westbrook soliciting work from at least one Primoris customer in Texas), and stands to benefit from the confidential information that Primoris provided to Westbrook in Texas.

7. Plaintiff continuously and systematically conducted business in this state, and the acts complained of herein occurred in this state. As such, Plaintiff has purposefully availed itself of the laws of this state, subjecting it to jurisdiction in this proceeding. Finally, this Court has personal jurisdiction over Westbrook and MasTec because they have removed this proceeding to this Court and have appeared in this action.

8. Venue of this action is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## III.
## FACTUAL BACKGROUND

**A. Primoris operates in a competitive market and depends on its customer relationships and confidential business information.**

9. Primoris is a sophisticated service provider in the electric and communications industries. This includes installation, maintenance, and repair of electrical transmission, substation, and distribution infrastructure. As a specific example, this includes construction and maintenance of above-ground and underground power lines.

10. Primoris' success is built on, among other things, favorable and confidential pricing and margins, proprietary business plans, and customer relationships. The competition is fierce, with Primoris and MasTec (and others) going head-to-head for the same customers and projects. Company information and customer relationships are key, which is why Primoris hired Westbrook in reliance on his promise not to compete directly against Primoris for 2 years after his termination in the event of his voluntary resignation or termination for cause.

**B. The non-compete and non-solicit covenants.**

11. Primoris hired Westbrook into a Vice President role around June 2018, and later promoted him to a Senior Vice President role. Westbrook was responsible for managing important Primoris business at the highest levels, including managing a portfolio of more than $100 million. This role also required Westbrook to access Primoris' confidential and trade secret information, including its pricing, margin, operational secrets, customer information, strategies, and other sensitive commercial information.

12. Westbrook signed a Noncompetition Agreement ("the Non-Compete Agreement") effective February 14, 2019, a copy of which is attached as **Exhibit 1**.

13. The Non-Compete Agreement states that Primoris will provide Westbrook with access to its confidential information and goodwill, which enabled Westbrook to perform his job duties for Primoris. (Ex. 1 preambles.)

14. Westbrook agreed to a reasonable non-competition covenant:

> [For] a period of two (2) years after the date on which either [Westbrook] voluntarily terminates his employment with [Primoris] or [Westbrook] is terminated by [Primoris] for cause . . . **[Westbrook] will not** [in the "Territory"] engage in . . . **be employed by** . . . or have any interest in . . . [any] entity or organization . . . which is engaged in **a business that directly or indirectly competes with the Business**. . .

(Ex. 1 § 1(a)(i) (emphasis added)).

15. Westbrook also agreed to reasonable non-solicitation covenants for the same two-year period. Specifically, Westbrook agreed not to "solicit or in any manner seek to induce any employee . . . of [Primoris] . . . to terminate his . . . engagement with [Primoris]." Westbrook also agreed he would not "solicit any customers or customer prospects of [Primoris] . . ." during the same period. (Ex. 1 § 1(a)(ii)).

16. The specific scope of business as defined in the agreement includes engineering, construction, and maintenance of electric power delivery facilities and gas distribution installations, including substations. (Ex. 1 preamble).

17. The specific geographic "Territory" as defined in the agreement includes: Alabama, Arkansas, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, certain parishes of Louisiana, Maryland, Mississippi, Missouri, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Virginia, and West Virginia. (Ex. 1 § 1(a)(i)).

18. In the Non-Compete Agreement, Westbrook agreed that the non-compete restrictions are reasonable as to scope, geography, and time, and necessary to protect Primoris' interest in its goodwill and confidential information. (Ex. 1 § 2). Westbrook further agreed the

time period applicable to these covenants will be extended for the same number of days that he remains in violation. (Ex. 1 § 3).

### C. Westbrook engages in financial malfeasance and Primoris terminates him for cause.

19. Around summer 2022, Primoris received whistleblower complaints against Westbrook and his business unit, and began to uncover egregious acts of wrongdoing. For example, Westbrook improperly siphoned Primoris funds to his direct report and close friend, Mike Boyd. Westbrook improperly approved at least $5,211.04 in mileage reimbursement for Boyd. Westbrook knew that Primoris was already paying Boyd a vehicle allowance and providing him a fuel card, so this was flagrant double dipping, self-dealing, and in violation of Primoris policies.

20. Westbrook also approved mileage reimbursement and airfare for Boyd on the same trips. As another example, Westbrook approved charges for vehicle maintenance service on Boyd's personal vehicle. These are additional instances of improper double dipping of which Westbrook approved with actual knowledge.

21. Westbrook also approved improper per diem payments to Justin McSpedden totaling at least $22,260. This was wrong because Primoris was also providing McSpedden with housing, a single-family home in Conroe, TX. Westbrook apparently participated in an effort to cover up this wrongdoing. When Primoris investigated the issue, McSpedden denied living in the Conroe house, and four other employees claimed they lived in the house. Primoris hired a private investigator, who provided video and photo evidence that these employees were lying. McSpedden was the only Primoris employee living at the home, and housed his own family there. Moreover, Westbrook and Boyd did not follow proper Primoris processes to secure this lodging, even though Westbrook was aware that Primoris has such processes in place.

22. Primoris has also learned of numerous instances of Westbrook's team members improperly charging personal expenses to Primoris. This includes charges from a guns and ammo shop, Amazon prime, and personal clothing, among other things.

23. At a minimum, Westbrook was grossly negligent in approving and overseeing the above Primoris expenses. They also constitute acts of financial dishonesty. Westbrook had a duty maintain proper controls over company expenses, but instead knowingly approved and oversaw high volumes of improper expenses, siphoning money away from Primoris into the pockets of his direct report and team members.

24. Above are only some examples of the wrongdoing Primoris has uncovered to date, and its investigation is ongoing.

25. In August 2022, Primoris terminated Westbrook's employment for cause.

26. The Non-Compete Agreement refers to the definition of "Cause" in the Employment Agreement, which the parties also signed effective February 14, 2019.

27. The Employment Agreement defines "Cause" as follows:

"Cause" shall mean the Employee's:

> (i) failure to devote substantially all his working time to the business of Employer and its Affiliates and Subsidiaries;
>
> (ii) willful disregard of his duties, or his intentional failure to act where the taking of such action would be in the ordinary course of the Employee's duties hereunder;
>
> (iii) gross negligence or willful misconduct in the performance of his duties hereunder;
>
> (iv) commission of any act of fraud, theft or financial dishonesty, or any felony or criminal act involving moral turpitude; or
>
> (v) unlawful use (including being under the influence) of alcohol or drugs or possession of illegal drugs while on the premises of the Employer or

any of its Affiliates or while performing duties and responsibilities to the Employer and its Affiliates.

(vi) the discontinuation or winding up of the Employer's business; or

(vii) Employee's material breach of any of the terms of this Agreement.

**D.   Westbrook's non-compete and non-solicitation covenants are enforceable.**

28.   Under Texas law, "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE ANN. § 15.50(a).

29.   Westbrook's non-compete and non-solicitation covenants are "ancillary to or part of an otherwise enforceable agreement" because: (1) he entered them as part of the Non-Compete Agreement, which is an enforceable contract; and (2) Primoris provided Westbrook access to its goodwill and confidential information. (Ex. 1).

30.   "The 'otherwise enforceable agreement' requirement is satisfied when the covenant is 'part of an agreement that contained mutual non-illusory promises.'" *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 773 (Tex. 2011). Primoris' promise to provide confidential and proprietary information, and subsequent provision of that information, in exchange for Westbrook's agreement not to disclose that information, constitutes an otherwise enforceable agreement as a matter of law. (*See* Ex. 1). Moreover, there is a "nexus" between the two because the point of having a non-competition agreement is to prevent Westbrook from exploiting Primoris' confidential information and goodwill for a competitor. *Marsh*, 354 S.W.3d at 775. "Consideration for a noncompete that is reasonably related to an interest worthy of protection, such as trade secrets, confidential information or goodwill, satisfies the statutory nexus." *Id.*

31. Texas courts routinely hold that restrictions like those in the Non-Compete Agreement are reasonable. "In order to be reasonable, the restrictive covenant 'must bear some relation to the activities of the employee.'" *Republic Services, Inc. v. Rodriguez*, 2014 WL 2936172, *6 (Tex. App.—Houston [14th Dist.] June 26, 2014, no. pet.). "A covenant is unreasonable if it is greater than required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted." *Id.*

32. The non-compete and non-solicitation covenants have reasonable limitations as to time, geographical area, and scope of activity.

33. <u>Time:</u> The restrictions are limited to two years following Westbrook's termination from Primoris. This is reasonable, as two to five years has repeatedly been held a reasonable time limitation in a noncompetition agreement. *Gallagher Healthcare Ins. Services v. Vogelsang*, 312 S.W.3d 640, 655 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Two to five years has repeatedly been held as a reasonable time in a noncompetition agreement.") (citing cases); *Brink's Inc. v. Patrick*, 2014 WL 2931824, *5 (N.D. Tex. June 27, 2014) ("Texas courts have generally upheld non-compete periods ranging from two to five years as reasonable.") (citing cases); *AMF Tuboscope v. McBryde*, 618 S.W. 2d 105, 108 (Tex. App.—Corpus Christi 1981). In this case, two years is particularly reasonable given the competitive nature of Primoris' business and Westbrook's access to Primoris' confidential information.

34. <u>Geographic scope:</u> Primoris seeks a geographic scope only including the specific Territory defined in the Non-Compete Agreement: Alabama, Arkansas, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, certain parishes of Louisiana, Maryland, Mississippi, Missouri, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Virginia, and West Virginia. Westbrook's role with Primoris included Primoris operations in these regions,

and Westbrook and MasTec stand to unlawfully compete against Primoris there. As such, this geographical scope is reasonable. Westbrook can directly engage in any transmission and distribution work anywhere else in North America.

35. This is consistent with Texas law, which have upheld geographic restrictions that are nationwide, continent-wide, or even worldwide. *See, e.g., Berotti v. C.E. Shepherd Co., Inc.*, 752 S.W.2d 648, 654 (Tex. App.—Houston (14th Dist.) 1988, no pet.).

36. <u>Scope of activity</u>: the non-compete covenant is limited to activity that competes specifically against Primoris in enumerated areas: engineering, construction, and maintenance of electric power delivery facilities and gas distribution installations, including substations. Primoris' proposed Temporary Restraining Order is reasonably tailored and conforms with this narrow scope. This means that Westbrook is only prohibited from participating in these enumerated activities and only where they compete against Primoris. This scope directly arises from the type of work Westbrook performed for Primoris. Moreover, this is a narrow scope of activity, and Westbrook can immediately do other work outside this scope, regardless of geography.

37. Westbrook also agreed that these restrictions are reasonable and necessary to protect Primoris' legitimate business interests. (Ex. 1 § 2).

38. Westbrook attended important meetings at Primoris headquarters in Fort Worth approximately two to four times per year (in addition to his trips to Texas-specific projects mentioned above), which included sharing of confidential information such as company strategy, financial performance, and customer strategies.

E. **Westbrook is breaching his covenants by competing against Primoris and causing Primoris irreparable harm.**

39. Westbrook's employment with Primoris terminated in August 2022. Primoris recently learned that Westbrook now has a similar role with MasTec – competing directly against Primoris.

40. Primoris is aware of Westbrook already competing directly against Primoris on behalf of MasTec, and soliciting Primoris customers. Westbrook is participating in bid processes involving Primoris customers for work in several states, including Texas.

41. MasTec is a direct competitor to Primoris, as both companies provide engineering, construction, and maintenance of electric power delivery and telecommunication installation in the enumerated territory. Having left Primoris, Westbrook is now in the position to use Primoris' information for a competitor.

42. Westbrook's employment with MasTec violates his non-compete obligations because he has a directly competing role and is in a position to usurp the same business he used to oversee at Primoris for the benefit of MasTec. Westbrook's bidding on work for Primoris customers also violates his non-solicitation obligations. Upon information and belief, Westbrook has also violated his employee non-solicitation obligations by soliciting, recruiting, and hiring Primoris employees over to MasTec.

43. Westbrook's apparent breaches of the Non-Compete Agreement are causing irreparable harm to Primoris. Westbrook is a very recent insider of Primoris, privy to Primoris' commercial secrets and confidential business strategies. For example, Westbrook is in a unique position to undercut Primoris' pricing and exploit his insider knowledge for the benefit of himself and MasTec.

44. The actual damages that Westbrook has caused (and will cause) to Primoris are uncertain. Without an injunction, Westbrook will continue to interfere with Primoris' customer

relationships in ways that cannot be easily discovered and causing damages that are difficult to measure.

**F.  MasTec is Westbrook's employer and supporting his unlawful competition.**

45. MasTec is undoubtedly aware that employees it hires are often subject to restrictive covenants, and specifically aware of Westbrook's non-compete obligations to Primoris. Primoris has provided a copy of the Non-Compete Agreement to MasTec.

46. As a result, MasTec is a knowing participant in Westbrook's unlawful competition, stands to benefit from it, has the power to stop Westbrook, and has refused to stop.

**G.  Primoris asked Westbrook and MasTec to stop.**

47. When it recently learned of Westbrook's unlawful activity, Primoris promptly sent cease and desist letters to Westbrook and MasTec, asking them to stop these violations.

48. To date, Westbrook and MasTec have refused to agree. In fact, they have refused to provide any information at all to Primoris.

## IV.
## CAUSES OF ACTION

**A.  Count I: Breach of Contract (against Westbrook)**

49. Plaintiff incorporates all prior paragraphs.

50. The Non-Compete Agreement is valid and enforceable, and Primoris performed its obligations thereunder.

51. Westbrook breached the Non-Compete Agreement, and continues to violate it by competing directly against Primoris in specified territory.

52. Westbrook's actions have damaged Primoris.

53. Primoris seeks all available damages, injunctive relief, and specific performance.

54. Primoris seeks recovery of its attorneys' fees as provided by the Non-Compete Agreement and Chapter 38 of the Texas Civil Practices and Remedies Code.

B. **Count II: Tortious Interference with Contract (against MasTec)**

55. Plaintiff incorporates all prior paragraphs.

56. Primoris has a valid contractual relationship with Westbrook, the Non-Compete Agreement.

57. MasTec willfully and intentionally interfered with that contract by employing Westbrook in a competing role in violation of the Non-Compete Agreement.

58. The interference proximately caused Primoris to suffer injury and irreparable harm.

59. Primoris incurred actual damage or loss.

C. **Count III: Breach of Fiduciary Duty (against Westbrook)**

60. Plaintiff incorporates all prior paragraphs.

61. Westbrook owed fiduciary duties to Primoris.

62. Westbrook breached those duties as described above.

63. Primoris has suffered damages as a result of Westbrook's breaches.

64. Westbrook has been unjustly enriched as a result of his breaches.

## V.
## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

65. Plaintiff incorporates all prior paragraphs.

66. Primoris seeks a temporary restraining order and temporary injunction narrowly tailored to enforce Westbrook's non-compete and non-solicitation covenants. This will preserve

the status quo pending a trial on the merits, and protect Primoris from ongoing harm that is difficult to measure.

### A. Standard for injunctive relief.

67. Courts may award injunctive relief where the plaintiff pleads and proves three elements: (1) a cause of action; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.*, 394 S.W.3d 186, 194 (Tex. App.—Houston [1st] 2012, no. pet.). The decision to grant or deny a temporary injunction lies in the discretion of the trial court, and that ruling is subject to reversal only for a clear abuse of that discretion. *Id.*

### B. Primoris has a valid cause of action and probable right to the relief it seeks.

68. As outlined above, Primoris has valid causes of action for breach of contract and tortious interference because:

- The restrictive covenants are enforceable under Texas law;

- Westbrook has and will likely continue breaching his non-compete and non-solicitation covenants by directly competing against Primoris and soliciting Primoris customers and employees; and

- MasTec is aware of Westbrook's obligations and will likely allow Westbrook to commit these breaches to enrich MasTec.

### C. Primoris faces imminent irreparable harm.

69. This Court can stop Primoris' ongoing imminent and irreparable harm. Primoris is suffering imminent harm because Westbrook is competing directly against Primoris and poses an imminent threat to Primoris' business. Primoris' customer relationships and goodwill are being threatened. Texas law is clear that loss of goodwill and business opportunities warrants injunctive relief. *See, e.g., Frequent Flyer Depot*, 281 S.W.3d 215, 228 (Tex. App.—Fort Worth 2009, pet. denied), *cert. denied*, 559 U.S. 1036 (2010) ("Disruption to a business can

be irreparable harm. Moreover, assigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy.") (internal citations omitted); *Townson v. Liming*, 2010 WL 2767984, at *3 (Tex. App.—Texarkana 2010, no pet.) ("The value of lost patients, lost business contacts and collaborations, and lost hospital privileges are anything but fixed, settled, and indisputable. Rather, by their very nature, it is likely that Liming might never even be aware of specific patients and business contacts lost."); *RenewData Corp. v. Strickler*, 2006 WL 504998, at *16 (Tex. App.—Austin 2006, no. pet.) ("Because it is difficult to assign a dollar value to loss of customer goodwill and clientele, it constitutes an irreparable injury.") (citing *Graham v. Mary Kay, Inc.*, 25 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d 754, 757 (Tex. App.—Houston [1st Dist.] 1982, no writ); *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 427 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 895-96 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

70.   The balance of equities is served by a temporary restraining order and temporary injunction, as it protects Primoris' customer relationships, confidential information, and goodwill. Moreover, an injunction would have no adverse effect on Westbrook apart from stopping his unlawful activity. He can do any lawful work outside the narrow scope and geographic location in Primoris' proposed Temporary Restraining Order.

71.   Plaintiff requests a low bond amount.

72.   Plaintiff further requests that a temporary injunction be ordered after notice and a hearing, enjoining Westbrook from further violations.

73. Plaintiff further requests that Defendants be cited to appear at a hearing in which Plaintiff will demonstrate a likelihood of success on the merits, and that a balancing of equities favors the issuance of a temporary injunction against Defendants.

74. Plaintiff is entitled to a temporary injunction against Westbrook and MasTec (and their agents, servants, employees, and anyone in active concert or participation) that prohibits Westbrook from further direct competition against Primoris, and MasTec from interfering in Westbrook's contractual obligations to Primoris.

## VI.
## CONDITIONS PRECEDENT

75. All conditions precedent have been met, have occurred, or have been waived

## VII.
## REFORMATION

76. If the Court determines that any noncompetition covenant contained in Westbrook's Non-Compete is ancillary to or part of an otherwise enforceable agreement, but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of Primoris, Primoris prays that before awarding damages, this Court reform such covenant, in whole or in part, to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of Primoris. Following any reformation, Primoris prays that the Court then enforce the covenant as reformed.

## VIII.
## EQUITABLE EXTENSION

77. Because Westbrook has failed to comply with her obligations under his Non-Compete Agreement, Primoris has been deprived of the full benefit of its restrictive covenants. Consequently, Primoris requests that this Court equitably extend the restrictive covenants in the Non-Compete Agreement between Westbrook and Primoris so that Primoris gets the full period of noncompetition it bargained for with Westbrook.

## IX.
## JURY DEMAND

78. Plaintiff respectfully requests a trial by jury on all issues so triable.

## X.
## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to award it:

a. Actual, direct, indirect, incidental, and consequential damages, together with pre- and post-judgment interest thereon;

b. Actual damages;

c. Exemplary damages;

d. Disgorgement of compensation, consideration, and/or profits;

e. Reasonable attorneys' fees, expenses, and court costs;

f. Temporary and permanent injunctive relief; and

g. All such other relief to which Plaintiff is entitled in equity or law.

Respectfully submitted,

*/s/ Russell D. Cawyer*
Russell D. Cawyer
State Bar No. 00793482
Taylor J. Winn
State Bar No. 24115960
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 878-3562
Facsimile: (817) 878-9280
russell.cawyer@kellyhart.com
taylor.winn@kellyhart.com

Joe Ahmad, Texas No. 00941100
joeahmad@azalaw.com
DJ Ringquist, Texas No. 24110280
dringquist@azalaw.com
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney Street, Suite 2500
Houston, Texas 77010
T: 713-655-1101
F: 713-655-0062

**COUNSEL FOR PLAINTIFF
PRIMORIS T&D SERVICES, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2023, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court, United States District Court for the Northern District of Texas, and served via E-mail upon the following:

Charles R. Penot, Jr.
David R. Clouston
Leslye E. Moseley
SESSIONS, ISRAEL & SHARTLE, LLC
900 Jackson Street, Suite 440
Dallas, Texas 75202-4473
cpenot@sessions.legal
dclouston@sessions.legal
lmoseley@sessions.legal

Michael P. Royal
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Lock Box 116
Dallas, TX 75201-2931
mroyal@littler.com

*/s/ Russell D. Cawyer*
Russell D. Cawyer

## VERIFICATION

STATE OF NEW JERSEY §
§
COUNTY OF BURLINGTON §

Before me, the undersigned notary public, on this day appeared James Bartholomew, Segment SVP - Primoris T&D East Division, who is personally known to me, and after first being duly sworn by me according to law, upon his oath said that he has read the above and foregoing Plaintiff's First Amended Complaint, Application for Temporary Restraining Order and Temporary Injunction; that all the factual statements contained in Paragraphs 9–47, therein are true and correct and based on personal knowledge; and that the First Amended Complaint is not groundless or brought in bad faith or for purposes of harassment.

_____
James Bartholomew

Subscribed and sworn to before me by James Bartholomew on May 10, 2023, to certify which witness my hand and official seal.

MARY STEPHANIE SANDERS
Notary Public - State of Florida
Commission # GG 927268
My Comm. Expires Nov 13, 2023
Bonded through National Notary Assn.

_____
Notary Public, State of Florida

My Commission Expires: 9/13/23