UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**PRIMORIS T&D SERVICES, LLC,**

    Plaintiff,

v.                                     **No. 4:23-CV-0416-P**

**MASTEC, INC. ET AL.,**

    Defendants.

## OPINION & ORDER

Before the Court is Defendants' Motion to Dismiss for Improper Venue. ECF No 14. For the following reasons, Defendants' Motion is **GRANTED IN PART**. The Court hereby **ORDERS** that this case is **TRANSFERRED** to the United States District Court for the Eastern District of Louisiana.

## FACTUAL & PROCEDURAL BACKGROUND

This suit arises out of an employment agreement between Defendant Austin Westbrook and Plaintiff Primoris T&D Services, LLC ("Primoris").

Primoris is a company that specializes in providing construction and maintenance services for power transmission and distribution systems. Westbrook is a lifelong Louisiana resident who began working for Primoris in 2018 as Vice President of the Gulf Region. A year after starting with Primoris, Westbrook signed a contract that contained four clauses: (1) a choice-of-law clause that requires Texas law to preside over any suit related to employment; (2) a forum-selection clause that dictates the Northern District of Texas – Dallas Division as the appropriate forum; (3) a noncompete clause; and (4) a non-solicitation clause.

During his employment with Primoris, Westbrook worked and lived in Holden, Louisiana, where Primoris maintains a branch of its

operations. While Westbrook would sometimes travel to southeastern Texas—where he supervised other branches—and expensed items like wings, beer, ribs, gumbo, and lodging, he spent the vast majority of his time working and living in Louisiana, where his position was based.

In August 2022, Westbrook was fired for cause—after allegedly making improper expense reimbursements.

Westbrook now works for a subsidiary of MasTec, Inc. ("MasTec")—a competitor to Primoris that operates in the same industry. After a multi-month long delay, Primoris sued MasTec and Westbrook in Texas state court seeking to enforce the non-competition and non-solicitation agreement that Westbrook signed and enjoin him from working for its competitor. The Defendants removed the case to this Court.

This Court held a hearing on Primoris's motion for a temporary restraining order and granted its motion. Defendants now collectively move for dismissal for improper venue and, in the alternative, transfer of the case to the eastern district of Louisiana.

The motion is now ripe for the Court's consideration.

## LEGAL STANDARD

### A. Improper Venue

Federal Rule of Civil Procedure 12(b)(3) allows for dismissal where venue is improper. FED. R. CIV. P. 12(b)(3). The Fifth Circuit has not addressed who bears the burden when a defendant raises improper venue—creating a split among district courts. *Compare Bounty-Full Entm't, Inc. v. Forever Blue Entm't Grp., Inc.*, 923 F. Supp. 950, 957 (S.D. Tex. 1996) (Hoyt, J.) (placing the burden on defendant), *with Langton v. Cbeyond Commc'n, LLC*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003) (Davis, J.) (placing the burden on plaintiff).

And while judges in this district usually put the burden exclusively on a defendant, this makes little sense when the plaintiff is the best situated to make its case for why it chose the venue in the first place. To hold otherwise places an unnecessary burden on defendants who must take up the position of a jurisdictional detective without the tools of

discovery. Put simply, if a plaintiff cannot defend its choice of venue, the case does not belong there in the first place.

After venue is raised by a defendant, the plaintiff has the burden to prove that venue is proper. *McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001). Plaintiffs need not exhaustively prove that venue is appropriate but only need to make a prima facie showing. *Id.; see also Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (using this same test for personal jurisdiction). A court should accept undisputed facts in a plaintiff's pleadings as true and resolve factual conflicts in the plaintiff's favor. *Int'l Cotton Mktg., Inc. v. Commodity Credit Corp.*, No. 5:08-CV-159-C ECF, 2009 WL 10705345, at *2 (N.D. Tex. Feb. 4, 2009) (Cummings, J.); *McCaskey*, 133 F. Supp. 2d at 523.

## ANALYSIS

Defendants assert that venue in this division is improper because the choice of law and forum selection clauses signed by Westbrook are void under Louisiana law which governs the contract. Primoris counters and states that Texas law should govern which allows for such provisions. The Court thus addresses both arguments.

## A. Choice of Law

Where diversity is the Court's basis for subject-matter jurisdiction, the forum state provides the law that governs the choice-of-law analysis. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 582 (5th Cir. 2015). The Supreme Court of Texas has consistently upheld the legitimacy of choice-of-law clauses. That said, these clauses are not invincible and may be found invalid where they "thwart or offend the public policy of the state the law of which ought otherwise to apply." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990). As a result, Texas courts use the Restatement (Second) of Conflict of Laws § 187(2) to determine whether to apply a choice of law provision. *See Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014), *reh'g denied* (Feb. 27, 2015). Thus, to render the choice-of-law provision unenforceable, Westbrook must prove the following three elements:

1. Whether Louisiana, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties;

2. Whether Louisiana has a *materially greater interest* than the chosen state in the determination of the particular issue; and

3. Whether the application of the law of the chosen state of Texas would be contrary to a fundamental policy of the Louisiana.

*See Cardoni*, 805 F.3d at 581 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b)).[1] The Court thus analyzes the three elements in turn.

1. State of applicable law

The "state of applicable law" determination is made by examining the "significant relationship test" which looks to "various contacts, in light of the basic choice-of-law principles enumerated in Section 6 of the Restatement." *DeSantis*, 793 S.W.2d at 678. These contacts include: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Cardoni*, 805 F.3d at 582. But at this point in the analysis, "there is no reason to consider whether public policy trumps the parties' agreement" as "the . . . significant relationship test does not take account of the parties' expectation that Texas law would apply." *Id.*

*First*, Westbrook asserts that the contract was "executed" in Louisiana while Primoris asserts that the contract was "drafted" in Texas.[2] Under this first element, where the contract was "drafted" is of no consequence. This is because "contracting" is the present participle of the word contract which is defined as: "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law." CONTRACT, BLACK'S LAW DICTIONARY (11th ed.

---

[1] Both parties stipulate that Texas has an interest and a relationship to the parties and thus the Court need not analyze the § 187(2)(a) factor.

[2] Primoris appears to concede this point in its response. ECF No. 21 at 14 ("Westbrook [is] domiciled in Louisiana and signed the contract there.")

2019). Thus, the act of contracting involves both parties and is not merely the place where a boilerplate employment agreement was copied and pasted together. Westbrook claims that he executed the noncompete agreement in Louisiana, and therefore, the first factor favors Louisiana.

*Second*, Primoris contends that "the terms [of the contract] were negotiated and executed by Primoris in Texas." But Primoris does not suggest whether the Westbrook was in Texas during these negotiations. Indeed, Primoris even concedes that Westbrook signed the contract in Louisiana. Without additional information, the second factor is neutral.

*Third*, Primoris asserts that, while Westbrook worked out of the Louisiana office, he was tasked with the oversight of two Texas offices in Conroe and Vidor. Primoris further claims that Westbrook took multiple trips to Texas to oversee Texas employees and projects. But Primoris does not dispute that Westbrook worked primarily out of the Holden, Louisiana office. And because the "significant relationship test" is only concerned with whether Louisiana is an appropriate alternative venue, the third factor still favors Louisiana as Westbrook was a citizen and employee in the state.

*Fourth*, the location of the subject matter of the contract appears to be very broad and inclusive of both Louisiana and Texas as it encompassed management of the "Gulf Division." But this analysis is not concerned yet with weighing the competing interests of the states, and so Louisiana—as Westbrook's operating base of performance—is certainly contemplated in the subject matter of the contract. Thus, the fourth factor favors Louisiana.

*Fifth*, it is undisputed that the domicile of Primoris is Texas, and that the domicile of Westbrook is Louisiana. But the text "place of business" is also included in this element. Notably, the text does not say "principal place of business," which would be a company's headquarters. Rather, "place of business" seems to imply a much broader connotation that could apply to satellite offices or branches that are at issue in a contract. Because Westbrook worked for Primoris out of its Holden, Louisiana place of business, the fifth factor favors Louisiana.

Thus, Louisiana—under the rule of § 188—is the state of the applicable law in the absence of the Texas choice-of-law clause at issue.

2. Contrary to fundamental policy

Westbrook asserts that the choice of law and choice of forum agreements are contrary to the public policy of Louisiana—a state that does not recognize these types of contractual provisions in many contexts. The Court agrees.

The general focus of this "fundamental policy" inquiry rests on "whether the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction." *DeSantis*, 793 S.W.2d at 680; *see also Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 178 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("The test is whether the chosen law contravenes a state *policy*, not the *outcome* in a particular case.")

Under Louisiana law, "a choice of forum clause or choice of law clause in an employee's contract . . . shall be null and void." Section 23:921(A)(2) (emphasis added). There is only one exception to this rule that applies "where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee *after* the occurrence of the incident which is the subject of the civil or administrative action." *Id.* (emphasis added). This statute is rooted in policy that protects the rights of workers within the state. And to abrogate such a common practice in employment contracting is not something that legislatures do for trivial reasons.

Here, the choice of law and forum selection clauses were not signed after the incident which is the subject of this action. Rather, they were signed well before any incident giving rise to this suit took place. As a result, this type of agreement goes against the fundamental policy of Louisiana, which was put in place to protect workers within its borders. *See Sawicki v. K/S Stavanger Prince*, 01-0528 ( La. 12/07/01), 802 So. 2d 598, 602 ("[Section] 23:921A(2) is an expression of strong Louisiana

6

public policy concerning forum selection clauses."). The application of the choice-of-law clause is thus contrary to Louisiana public policy.

3. Materially greater interest

Under Texas law, if the alternative state does not have a "materially greater interest" in the determination of the issue, Texas law will still apply even where the application of law is contrary to a fundamental policy of the alternative state. *Drennen*, 452 S.W.3d at 326. Courts generally find that, while all states maintain "a general interest in protecting the justifiable expectations of entities doing business in several states," the presence of a citizen employee or similarly situated individuals within their borders outweigh generalized macro-economic concerns.[3]

The Fifth Circuit has adopted this reasoning from Texas courts as well. In *Cardoni*, a Texas corporation sought to apply a Texas choice of law clause against an Oklahoma-based bank employee who was subject to a noncompete agreement. 805 F.3d at 581. The bank employee also supervised certain managers in its Dallas, Texas office. *Id.* The Fifth Circuit reasoned that the choice-of-law clause was unenforceable because Oklahoma had a "materially greater interest" in the enforcement of a restrictive covenant "because of its impact on employees residing in its borders, a company operating in the state, a competing bank headquartered in the state that wants the services of the employees, and the Oklahoma customers of the competing bank." *Id.* Indeed, the court noted that a generalized interest in "maintaining uniform contracts for multistate employees" has never "been deemed

---

[3] *See Cardoni*, 805 F.3d at 581 ("Prosperity cites no Texas case in which a state's interest in a company's maintaining uniform contracts for multistate employees has been deemed "materially greater" than a state's interest in regulating conduct occurring largely within its borders.); *Drennen*, 452 S.W.3d at 326 ("So while New York shares with Texas a general interest in protecting the justifiable expectations of entities doing business in several states, that does not outweigh Texas's interests in this transaction."); *Desantis*, 793 S.W.2d at 680 ("Texas is directly interested in DeSantis as an employee in this state . . . . Florida's direct interest in the . . . noncompetition agreement in this case is limited to protecting a national business headquartered in that state . . . . Texas has a materially greater interest than Florida.")

materially greater than a state's interest in regulating conduct occurring largely within its borders." *Id.*

Like the bank employee in *Cardoni*, who worked for an out-of-state company in his resident state, Westbrook is a citizen of Louisiana who worked for a Texas company in its Louisiana office. Also like the employee in *Cardoni*, who engaged with branches and employees in Texas, Westbrook supervised certain company activities in Texas from his branch in Louisiana. Further similarities are present. Indeed, Primoris asserts interests nearly identical to that of the plaintiff's in *Cardoni* as well. The only distinguishable fact between these two cases is that MasTec is not headquartered in Louisiana. But this fact seems indistinguishable as MasTec is a Louisiana employer who also competes for customers and contracts within the state.

Because the facts between these two cases are extremely similar, the Court must find—in line with the Fifth Circuit—that Louisiana has a materially greater interest in this litigation than Texas does. And because all three elements are met, Louisiana law applies.

## B. Choice of Forum

Because the law of Louisiana applies, the contractual choice of forum clause—which dictates that the Dallas Division of the Northern District of Texas is the required venue—fails as a matter of law.[4] *See Sawicki v. K/S Stavanger Prince*, 802 So.2d 598, 603 (La. 12/7/01) (relying on § 23:921(A)(2) to render a forum-selection clause in a collective-bargaining agreement unenforceable). This is because the provision was not "expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action." LA. REV. STAT. § 23:921(A)(2).

The provisions at issue were signed at the start of Westbrook's employment and not after the incident that is the subject of action. Westbrook is thus not subject to the forum-selection clause.

---

[4] It is entirely unclear why this case was brought in the Fort Worth Division to begin with given the forum-selection clause specifies Dallas as the only appropriate division in which to bring a federal case.

## C. Venue - 28 U.S.C. § 1391

28 U.S.C. § 1391 governs venue in civil actions before district courts. It states that venue for a civil action is proper under three circumstances:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

As to § 1391(b)(1), no defendant is a resident of the state of Texas. MasTec is a Florida corporation with its principal place of business in Florida, and Westbrook is a resident citizen of Louisiana. So venue is not proper under this provision.

As to § 1391(b)(2), none of the substantial events or omissions giving rise to this claim occurred in the Northern District of Texas. Westbrook—at all times during his employment—worked out of the Holden, Louisiana branch of Primoris. His Texas contacts during his term of employment involved his supervision of the Conroe and Vidor branches—cities that are in southeast Texas and not under the jurisdiction of this Court. And though the expense reports submitted by Primoris show that Westbrook really enjoyed eating wings and ribs at the Twin Peaks in Beaumont, and that he found a really good gumbo joint in Vidor, these are not in the Northern District of Texas either. Saying that the case belongs in this district because Westbrook ate company-expensed food in eastern Texas is only slightly more persuasive than saying that it belongs in Louisiana because he enjoys gumbo and speaks French. His sparse contacts with Dallas—like

staying at the Omni and eating at a McDonalds—likewise do not give rise to substantial parts of the events of this case—especially where they are complexly disconnected from the Fort Worth Division. *See Six Flags Ent. Corp. v. Travelers Cas. & Sur. Co. of Am.*, No. 4:21-CV-00670-P, 2021 WL 2064903, at *2 (N.D. Tex. May 21, 2021) ("Fort Worth and Dallas are two vastly different cities and judicial divisions with different judges, juries, cultures, and histories.")

As to § 1391(b)(3), it does not apply because this action may be brought in the Eastern District of Louisiana, where Westbrook substantially performed his duties as an employee of Primoris.

Venue is wrongly applied in the Northern District of Texas.

### D. 1404(a) Transfer

Because venue is wrongly applied in this district, the Court must determine whether the case should be dismissed or transferred to a district where venue is proper. *See* § 1404(a). And because dismissal is improper where a case is removed under 28 U.S.C. § 1441(a), transfer is the only option.[5] The moving party bears the burden of showing good cause as to why the case should be transferred. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). But even if a party does not request a transfer, a court may transfer the case on its own authority "for the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a)

Westbrook asserts in his reply that venue should be transferred to the Eastern District of Louisiana because it is where Westbrook worked as an employee for Primoris. The Court determines that the eastern district is the most appropriate venue to hear this case as it is a proper venue under § 1391(b)(2). The Eastern District of Louisana is where Westbrook undertook his employment with Primoris and where he signed the agreement at issue. Likewise, the injunctive relief that may be issued by a court will largely be enforced in the territory that

---

[5] *See* 28 U.S.C. § 1390(c) ("This chapter shall not determine the district court to which a civil action pending in a State court may be removed, but shall govern the transfer of an action so removed as between districts and divisions of the United States district courts.")

encompasses the Eastern District of Louisiana as it is still his place of employment with MasTec.

To determine whether this case should be transferred to Louisiana, this Court must engage in the exhibition of analyzing four private and four public interest factors—none of which are given dispositive weight. *See In re Volkswagen AG*, 371 F.3d at 203. As with all eight-factor tests, this demonstration comes down to a commonsense judgment on the part of the Court.

1. <u>Private Interest Factors</u>

The private interest factors are: (1) the accessibility of sources of proof; (2) the ability of the court to secure the attendance of witnesses; (3) the cost of attendance for witnesses; and (4) all other factors that make a trial expeditious and inexpensive. *See In re Volkswagen AG*, 371 F.3d at 203.

*First*, the accessibility of sources of proof is not a major issue here as Westbrook's employment with both companies at issue occurred in Louisiana. *Second*, the ability of the court to secure the attendance of witnesses is likely not a major issue. Many witnesses are in Louisiana, and it is no less convenient for the Texas witnesses to make a quick trip across the border than it would be if the roles were reversed. *Third*, and for the same reasons, the cost of attendance for witnesses is also not a major issue. *Fourth*, requiring Primoris to refile the case in a new district would cause a waste of time and expenses for all parties involved.

The private factors favor transfer.

2. <u>Public Interest Factors</u>

The public interest factors are: (1) the court's congestion and ability to hear the case, (2) the forum's interest in having localized interests decided at home, (3) the familiarity of the forum with the applicable law, and (4) the avoidance of conflict of laws in the application of foreign law. *See In re Volkswagen AG*, 371 F.3d at 203–04.

*First*, the Court concludes that the Eastern District of Louisiana is not unusually congested and can hear the case. *Second*, the forum is the

home of Westbrook and—as discussed above—Louisiana has a direct interest in hearing a case that involves the future work of a resident within their borders. *Third*, the Eastern District of Louisiana is familiar with Louisiana law. *Fourth*, no foreign law affects the case and conflict is unlikely to exist here.

The public interest factors favor transfer.

## CONCLUSION

For the reasons stated above, Defendants' Motion is **GRANTED IN PART**. The Court hereby **ORDERS** that this case is **TRANSFERRED** to the United States District Court for the Eastern District of Louisiana pursuant to § 1404.

**SO ORDERED** on this **11th day of May 2023.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE